Dear Ms. Kuehl:
On behalf of the St. Bernard Parish Library Board of Control ("Board"), you have requested an opinion of the Attorney General regarding St. Bernard Parish's ("Parish") use of a specific library building as well as the land on which the building is located. In your request, you state that, post-Katrina, the Parish converted the existing library building into office space for the St. Bernard Department of Public Works. You specifically ask whether the parish government can "appropriate the land and the building without fair-market compensation to the library or without providing a library building of equal size and presence."
In addition to your request, you have provided this office with minutes from a library board meeting conducted on December 12, 1963, a 1963 Legislative Auditor's Report, a 1988 independent audit, select accounting records of St. Bernard Parish for 2007, and the specific tax propositions from 1962 which illustrate that the land in question was, in fact, purchased with dedicated library tax revenues. You have also informed our office that the library is currently being operated out of a "trailer," the St. Bernard Parish Department of Public Works still occupies the former library, and that the Parish appears to have no intentions of returning the library land and building to library purposes. In further support of this, you reference the 2007 closing journal entries for the Parish which actually remove the library land and building as library assets.
You have also provided this office with St. Bernard Parish Council Resolution #66-07-07 ("Resolution"), enacted in July 2007, which provided, in the aftermath of Hurricane Katrina, that the St. Bernard Parish Library ("Library") was relocated to an interim location pursuant to a generous offer of assistance by the Gates Foundation. The Resolution further stated that the interim assistance would be provided to the library in sustaining limited library *Page 2 
services over the next three years; and then the library would be supported by the St. Bernard Parish Council for any time beyond the period that the Gates Foundation does not provide such support.
In first considering the circumstances of this relocation, it is necessary to consider the emergency authority that the Parish holds in a situation such as the one it faced in the aftermath of Hurricane Katrina. This information is the key to understanding what the Parish can do with library property in a time of emergency.
The Louisiana Homeland Security and Emergency Assistance and Disaster Act[1] ("Act") sets forth the applicable law governing emergency situations in the State of Louisiana. La.R.S. 29:727(F), within this Act, specifically states as follows:
 [i]n addition to any other powers conferred upon the parish president by the constitution, laws, or by a home rule charter or plan of government, such authority may do any or all of the following:
 (1) Suspend the provisions of any regulatory ordinance prescribing the procedures for conduct of local business, or the orders, rules, or regulations of any local agency, if strict compliance with the provisions of any ordinance, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency.
 (2) Utilize all available resources of the local government as reasonably necessary to cope with the local disaster or emergency.
 (3) Transfer the direction, personnel, or functions of local departments and agencies or units thereof for the purpose of performing or facilitating emergency services.
 (4) Subject to any applicable requirements for compensation, commandeer or utilize any private property if he finds this necessary to cope with the local disaster.
While the Act allocates the powers above to the parish presidents of political subdivisions, La.R.S. 29:727(D) specifically states that "[a]ll executive orders or proclamations issued under this Subsection shall indicate the nature of the emergency, the area or areas which are or may be affected, and the conditions which brought it about." St. Bernard Parish Council Resolution #66-07-07, an ordinance of the St. Bernard Parish Council, was enacted post-Katrina, but it does not indicate any emergency situation, areas which where or would be affected, or even the conditions which brought it about as stated in La.R.S. 29:727(D). It is therefore the opinion of this office that the Resolution was not enacted *Page 3 
pursuant to the emergency powers allowed to parishes under the Louisiana Homeland Security and Emergency Assistance and Disaster Act because it did not comply with La.R.S. 29:727(D). It must also be noted that the Resolution was enacted by the St. Bernard Parish Council and was not an order of the parish president.[2] Since the Resolution was not enacted pursuant to any emergency power granted by the Louisiana Homeland Security and Emergency Assistance and Disaster Act, it is necessary to consider the local law governing such situations.
The Home Rule Charter for the Parish of St. Bernard states as follows:
 Sec. 2-14. Emergency ordinances.[3]
 (a) To meet a public emergency affecting life, health, property, or public safety, the council by the favorable vote of at least a majority of the total council membership, may adopt an emergency ordinance at the meeting at which it is introduced, provided that no such ordinance may be used to levy taxes or special assessments; grant or extend a franchise; incur debt, except as provided in section 5-04(b); adopt or amend an official map, platting, or subdivision controls or zoning regulations; or change rates, fees, or charges established by the parish government. Each emergency ordinance shall contain a specific statement of the emergency claimed.
 *** (c) Emergency ordinances shall be effective for no longer than sixty (60) calendar days after final approval.
While the resolution, on its face, appears to be enacted pursuant to the emergency created by Hurricane Katrina, the resolution does not set forth any specific statement of the emergency claimed. In addition, subsection (c) of Sec. 2-14 of the Home Rule Charter explicitly provides that emergency ordinances shall be effective for no longer than sixty *Page 4 
calendar days after final approval.[4] Therefore, it appears that no valid emergency ordinance of St. Bernard Parish is currently in effect regarding the relocation of the Library.
Since it does not appear from the resolution that St. Bernard Parish used emergency powers, it is possible that the Parish used its special powers under the St. Bernard Parish Home Rule Charter:
 Sec. 1-05. Special powers.
 The parish government shall have the right, power, and authority to pass all ordinances requisite or necessary to promote, protect, and preserve the general welfare, safety, health, peace, and good order of the parish, including, but not by way of limitation, the right, power, and authority to pass ordinances on all subject matter necessary, requisite, or proper for the management of parish affairs, and all other subject matter without exception, subject only to the limitation that the same shall not be inconsistent with the constitution, statutes, or laws of the State of Louisiana or with this Charter.
Thus, we are of the opinion that the Parish enacted the resolution in question pursuant to this authority. While St. Bernard Parish may "pass all ordinances requisite or necessary to promote, protect, and preserve the general welfare, safety, health, peace, and good order of the parish," it remains subject to the limitation that the "same shall not be inconsistent with the constitution, statutes, or laws of the State of Louisiana or with [the St. Bernard Parish Home Rule] Charter."
According to the information provided with your request, a special tax proposition and request for the issuance of bonds, for St. Bernard Parish public libraries, which was ultimately approved by the voters of St. Bernard Parish on May 2, 1962, states as follows:
 Proposition No. 3
 Shall the Parish of St. Bernard, State of Louisiana, incur debt and issue bonds to the amount of Two Hundred Twenty-Five Thousand Dollars ($225,000.00), to run twenty-five (25) years from date thereof, with interest at a rate not exceeding six percentum (6%) per annum, for the purpose of constructing a public library for said Parish and acquiring the necessary land, equipment and furnishings therefore, title to which shall be in the public? *Page 5 
 *** Proposition No. 5
 Shall the Parish of St. Bernard, State of Louisiana, levy a one and two-thirds (1-2/3) mills tax on all the property subject to State taxation in said Parish for a period of four (4) years beginning with the year 1963, for the purpose of constructing, maintaining and operating public libraries in the parish?
With regard to the Louisiana law applicable to dedicated taxes, this office has consistently opined that the proceeds of an ad valorem tax must be used in the manner set forth in the proposition approved by the electorate.[5] This proposition is codified as La.R.S. 39:704, which provides that "[t]he proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied."[6]
As mentioned above, in 1962, Propositions 3 and 5 were approved by the electorate of St. Bernard Parish. Therefore, it is the opinion of this office that, pursuant to La.R.S. 39:704, these special taxes and bonds, created specifically for constructing and/or operating and maintaining public libraries in St. Bernard Parish, constitute a trust fund to be used exclusively for public libraries, the purpose for which this tax was levied. It should be noted that the revenue and funds derived from the special tax mentioned above can only be used for the purposes stated in the tax proposition. This office, in the past, has opined that ad valorem tax revenues generated by a voter-approved tax dedicated to the operation and maintenance of parish health units may not even be used for the construction and/or lease of a new health facility.[7] In such a situation, the only way a Parish is able to use funds for another purpose is to seek voter approval to rededicate the tax for a different purpose.[8] Thus it is our opinion that such laws must be strictly construed.
Accordingly, it is the opinion of this office that, St. Bernard Parish may appropriate Parish assets as it deems fit. However, the Parish must do so with the understanding that "[t]he proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied." Louisiana jurisprudence has repeatedly provided that special tax authorizations must be strictly construed.[9] InHemler v. *Page 6 Richland Parish School Board, supra, the Supreme Court stated that "[i]t is a familiar principle that laws authorizing taxation . . . are in derogation of common rights; and therefore are to be strictly construed . . . this is especially true of laws authorizing special taxes." Therefore, it is further our opinion that, pursuant to the May 2, 1962 tax proposal, the proceeds of the above described tax can only be used for operating and maintaining the Library. The same applies for the bonds issued for library construction and maintenance. St. Bernard Parish must either return the library building and land back to its originally intended purpose or must reallocate Parish funding, in an amount commensurate with the amount of the library building and land, to the library purposes provided in the 1962 tax proposition.
We conclude that the subject tax proceeds may not be used for permanently maintaining office space for the St. Bernard Parish Department of Public Works. Alternatively, if the Parish intends to continue using this library property for the Department of Public Works, the Parish must request that the voters rededicate the proceeds of the tax so as to include the Parish's current intended use. A rededication election would have to be approved by the State Bond Commission as per La.R.S. 39:1410.61.[10] Absent a voter-approved rededication of the library tax and bonds at issue, St. Bernard Parish may only use these assets in a manner consistent with the original intent of the approved propositions.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ DANIEL D. HENRY JR. Assistant Attorney General
 JDC/DDH/jv
[1] La.R.S. 29:721 et seq.
[2] The Louisiana Homeland Security and Emergency Assistance and Disaster Act states that the emergency powers listed in La.R.S. 29:727(F) are "conferred upon the Parish President" and not the governing body of the political subdivision.
[3] Section 5-04(b) of the St. Bernard Parish Home Rule Charter allows the Parish to make emergency appropriations to meet a public emergency affecting life, health, property, or the public peace. While the council may make emergency appropriations, these appropriations shall be made by emergency ordinance in accordance with Section 2-14.
[4] The Office of the Attorney General would like to note the fact that Section 2-14 of the St. Bernard Parish Home Rule Charter is in conflict with La.R.S. 29:727 (D). La.R.S. 29:727(D) provides that "no state of emergency may continue for longer than thirty days unless extended by the parish president." It therefore follows that the sixty day period may be limited to a thirty day one as a result of section 727 (D). Since the ordinance currently being considered in this Opinion was not enacted pursuant to an emergency ordinance, it is not necessary to make such a determination. This Office does however remain of the opinion that all parish emergency regulations must comply with applicable State law.
[5] La. Atty. Gen. Op. Nos. 88-601, 96-494, 97-434, 98-287, 06-0160.
[6] La.R.S. 39:704.
[7] La. Atty. Gen. Op. No. 96-494.
[8] Id. This opinion also states that in addition to having the tax rededicated, it is also necessary to obtain approval for the actual rededication election from the State Bond Commission.
[9] Hemler v. Richland Parish School Board,76 So. 585, 586 (La. 1917); See also, Watkins v. Ouachita ParishSchool Board, 136 So. 591 (La. 1931); Hodnett v. Monroe CitySchool Board, 277 So.2d 598 (La. App. 2nd Cir. 1972); andBrock v. St. James Parish Council, 407 So.2d 1265 (La. App. 4th Cir. 1981), writ denied.
[10] La. Atty. Gen. Op. Nos. 96-494 and 98-287.